UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

_____
                                          )
In re BETTY JEAN ZIMMER,                  )
                                          )
                    Debtor.               )   Case No. C07-1591RSL
_____)
                                          )
CINDY P. HAINES,                          )   Bankruptcy Case No. 05-23790
                                          )
                    Appellant,            )   Adversary No. 05-01489
            v.                            )
                                          )   ORDER REVERSING IN PART AND
JOHN S. PETERSON, in his capacity as      )   REMANDING MATTER
Chapter 7 Trustee,                        )
                                          )
                    Appellee.             )
_____)

## I. INTRODUCTION

This matter comes before the Court on appellant Cindy P. Haines' appeal from the judgment of the Honorable Thomas T. Glover, United States Bankruptcy Judge, avoiding the transfer of an interest in real property under 11 U.S.C. § 548(a)(1) and awarding the debtor's estate $45,000 under 11 U.S.C. § 550(a). The Court, acting in an appellate capacity, reviews the bankruptcy court's legal conclusions *de novo* and its factual determinations for clear error. In re Olshan, 356 F.3d 1078, 1083 (9th Cir. 2004). Mixed questions of law and fact are reviewed *de novo*. Banks v. Gill Distribution Centers, Inc., 263 F.3d 862, 867 (9th Cir. 2001).

ORDER REVERSING IN PART AND
REMANDING MATTER - 1

## II. DISCUSSION

**A.     Background.**

On March 19, 2005, debtor Betty Zimmer quitclaim any interest she may have had in a commercial building located in Kingston, Washington, to appellant Cindy P. Haines. Seven months later, Zimmer filed for bankruptcy under Chapter 7. The primary issue in this case is whether this transfer can be avoided under 11 U.S.C. § 548(a), which provides in relevant part:

> (1) The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily – (A) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted . . . .

Haines argues that Zimmer had no interest in the Kingston building at the time of the transfer or, in the alternative, that the bankruptcy court erred in valuing Zimmer's interest.[1]

Zimmer and Haines were involved in a committed intimate relationship for nine years. During that time, they put all of their assets, including bank accounts, cars, and real property, in both of their names so that the assets could be used by and/or transferred to the caretaker/survivor if something happened to one of them. Nevertheless, the couple was generally aware of which assets "belonged" to which woman: for example, Zimmer brought a significant bank account to the relationship which only she accessed even though the account was in both of their names. During their relationship, Zimmer and Haines purchased a residential property and the commercial building at issue in this case. Zimmer provided the

---

[1] Appellant's opening brief also alleges error in the bankruptcy court's characterization of the parties' ownership interests and the imputation of rent to Haines. Appellant does not explain how these alleged errors, standing alone, had an impact on the bankruptcy court's decision or are otherwise relevant to the outcome of this case. Only the nature and valuation of Zimmer's interest in the Kingston building were discussed in appellant's reply and at oral argument on May 19, 2008.

ORDER REVERSING IN PART AND
REMANDING MATTER - 2                     -2-

down payment for both properties, but Haines paid the lion's share of the monthly bills, including both mortgages. With regards to the Kingston building, Zimmer contributed approximately $26,000 at closing from the money she brought to the relationship. Title to the building was taken as "Joint Tenants with the Right of Survivorship, and not as Tenants in Common." Haines paid the mortgage on, managed, and maintained the Kingston building from the time it was purchased in 1994 until the present: Zimmer made no contributions beyond the down payment. Haines operated her businesses out of the building and, between 1997 and 2002, paid Zimmer a share of the rents collected.

In November 2002, Zimmer and Haines separated. The couple divided their assets, with Zimmer taking a car, her bank account, and half of the proceeds from the house the couple had bought together. Haines ended up with her bank account(s), half the proceeds from the house,[2] and the Kingston building. After November 2002, Haines continued to operate the Kingston building as before except that she no longer paid Zimmer a portion of the rents. Neither Zimmer nor Haines took any steps to take Zimmer off the title or mortgage documents. In fact, in December 2002, Zimmer borrowed money from her parents and promised to pay it back "[w]hen Cindy Haines and my self [sic] sell are [sic] building in Kingston, WA or get the money another way." In December 2003, Zimmer signed a "Promissory Note" in favor of her parents for money she, and in some instances Haines, had borrowed over the preceding five years: again Zimmer identified the Kingston building as collateral for the loans.

In March 2005, Zimmer contacted Haines and offered to quitclaim the Kingston building to her. The parties understood that the quitclaim would release Zimmer from any obligation under the mortgage and make Haines fully responsible. In conformance with Washington law, Zimmer and Haines filed a "Real Estate Excise Tax Affidavit" in which the

---

[2] There is evidence in the record that Haines never actually received any funds from the sale of the residence because her portion got tied up in a third-party bankruptcy proceeding.

ORDER REVERSING IN PART AND
REMANDING MATTER - 3                           -3-

value of the property transferred was calculated as half of the outstanding mortgage obligation. Again, however, neither Zimmer nor Haines amended the mortgage documents or obtained a release from the mortgagor.

**B.     Analysis**

    **1.     Ownership Interest**

This Court "must accept the bankruptcy court's findings of fact unless upon review [it] is left with the definite and firm conviction that a mistake has been committed." In re Jan Weilert RV, Inc., 315 F.3d 1192, 1196 (9th Cir. 2003). "This standard plainly does not entitle a reviewing court to reverse the finding of the trier of fact simply because it is convinced that it would have decided the case differently." Anderson v. City of Bessemer City, 470 U.S. 564, 573 (1985). Where there are two permissible views of the evidence, the bankruptcy court's choice between them will not be disturbed. In re Rifino, 245 F.3d 1083, 1086-87 (9th Cir. 2001).

After hearing the testimony of the witnesses and reviewing all the evidence, Judge Glover found that "Zimmer and Haines each owned an undivided one-half interest in the Property in the spring of 2005 when the quitclaim deed was issued . . . ." There is ample evidence in the record to support the finding that Zimmer held more than just bare legal title to the Kingston building. Zimmer and Haines purchased the property together, identifying themselves on the title as joint tenants with the right to survivorship. Between 1997 and 2002, Zimmer drew significant income from the property, a benefit that was consistent with the title documents and Zimmer's role as part owner. The deed and the distribution of income are inconsistent with Zimmer's testimony that she had gifted the $26,000 down payment to Haines. Nor is there any indication that the payments Haines made to Zimmer were intended to pay back the down payment or otherwise reduce Zimmer's ownership interest in the Kingston building. Even after Zimmer and Haines split up, no attempt was made to alter the title or mortgage documents to reflect a formal property distribution. The legal documents, therefore, still showed

ORDER REVERSING IN PART AND
REMANDING MATTER - 4                              -4-

Zimmer as a part owner and she continued to view the building itself (although not the income generated by the building) as a personal asset.

The fact that the evidence would also support a finding that Zimmer had voluntarily relinquished her interest in the Kingston building when the couple separated in November 2002 cannot be the basis for reversing the bankruptcy court's decision. Judge Glover's finding "is plausible in light of the record viewed in its entirety" and will not be disturbed. Anderson, 470 U.S. at 574.

### 2. Valuation of Zimmer's Interest

Haines also challenges Judge Glover's valuation of Zimmer's interest as of March 2005 at one-half of the equity in the building. Pursuant to 11 U.S.C. § 548(a)(1), the trustee is entitled to recover for the estate only the "interest of the debtor in property . . . ." Haines asserts that the bankruptcy court erred both legally and factually when evaluating Zimmer's interest in the Kingston building. Haines argues that Judge Glover's failure to apply Washington law governing the distribution of property following the termination of a committed intimate relationship was reversible legal error. The Court agrees.

"[W]hen dealing with property distribution between partners in a committed intimate relationship, Washington common law has evolved to look beyond how property is titled, requiring equitable distribution of property that would have been community property had the partners been married." Olver v. Fowler, 161 Wn.2d 655, 668 (2007). Property acquired during a committed intimate relationship is presumed to belong to both parties, but the presumption can be rebutted. Connell v. Francisco, 127 Wn.2d 339, 351 (1995). Where, as here, joint ownership exists, the dissolution statute, RCW 26.09.080, offers guidance to courts as they attempt to reach a fair and equitable distribution of the property between the partners. In

ORDER REVERSING IN PART AND
REMANDING MATTER - 5                    -5-

re Marriage of Pennington, 142 Wn.2d 592, 602 (2000).[3]  The specific, but non-inclusive, factors to be considered under RCW 26.09.080 are the nature and extent of the community and separate properties, the duration of the relationship, and the economic circumstances of each partner.

In its oral opinion, the bankruptcy court barely mentions equitable considerations, instead focusing on the intent of the couple at the time the Kingston building was purchased and the lack of any subsequent agreements.  Trial Tr. at 134.  Although Judge Glover indicated that the outcome would "probably" be the same if he considered "the meritritious [sic] relationship cases" (Trial Tr. at 134), he made no attempt to evaluate the overall fairness of the 2002 property distribution, the economic circumstances of Zimmer and Haines, or their contributions to and withdrawals from the property.  Under Washington law and 11 U.S.C. § 548(a)(1), the bankruptcy court was required to determine Zimmer's equity interest as of March 2005.  The intent of the parties at the time the property was purchased and/or their contractual arrangements may be relevant to this issue, but they do not govern the analysis.  See, e.g., Pennington, 142 Wn.2d at 602 (courts must ensure a fair and equitable distribution of property acquired during the relationship).

The trustee argues that, even if the bankruptcy court erred, a remand is unnecessary because the bankruptcy court could reach the same result under the equitable analysis discussed above.  It is true that the outcome may ultimately be the same.  The bankruptcy court could conclude, for example, that Zimmer's contribution of the down payment made the purchase of the Kingston building possible and that, given her reduced economic status following the couple's separation, the property should have been divided equally when the relationship dissolved.  The problem is not that a 50/50 split is factually unsupportable,  but

---

[3] RCW 26.09.080 was recently amended to apply to the dissolution of a domestic partnership as well as the dissolution of a marriage.  2008 WA Legis. Serv. Ch. 6, S.S.H.B. 3104 (approved Mar. 12, 2008).

ORDER REVERSING IN PART AND
REMANDING MATTER - 6                              -6-

rather that the failure to evaluate the equities as mandated by Washington law constitutes legal error. Because the evidence could also support other valuations of Zimmer's interests, it is impossible to conclude that this error was harmless. Appellant points to evidence from which one could reasonably conclude that Zimmer had relinquished or been compensated for any interest she had in the Kingston building as of March 2005. Or, as recognized by the trustee at trial, the bankruptcy court could find that Zimmer's interest equaled the down payment of $26,000, rather than half of the total equity in the building. Trial Tr. at 122-23. The bankruptcy court should be given the opportunity to apply the correct law, weigh the equities of the situation, and make a fair distribution of the Kingston property.

For all of the foregoing reasons, this matter is remanded to the bankruptcy court for further review of the existing record to determine Zimmer's equitable interest in the Kingston building as of March 2005. On remand, the bankruptcy court may, if it believes it would be helpful, request additional briefing from the parties.

Dated this 22nd day of May, 2008.

*Robert S. Lasnik* (signature)

Robert S. Lasnik
United States District Judge

ORDER REVERSING IN PART AND
REMANDING MATTER - 7               -7-